Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| Wilmer Ramiro Enriquez Turcios, individually, and on behalf of Elba Guerrero Alvarado, Josue Enriquez, and Jose Enriquez <br><br> *Plaintiff*, <br><br> v. <br><br> Chad F. Wolf, Acting Secretary of the Department of Homeland Security; Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; William P. Barr, Attorney General; Donald J. Trump, President of the U.S. <br><br> *Defendants*. | Case No. 4:20-cv-1982 <br><br><br><br> Date: June 4, 2020 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

This is a complaint for declaratory and injunctive relief. The Plaintiff, Wilmer Ramiro Enriquez Turcios, individually and on behalf of Elba Guerrero Alvarado, Josue Enriquez, and Jose Enriquez, files the instant complaint against Defendants because the Trump administration's "Migrant Protection Protocols" ("MPP") violate the Administrative Procedure Act ("APA"). As such, Plaintiff files this Complaint requesting that this Court enjoin the MPP's application to Plaintiff's wife, Elba Guerrero Alvarado, and his two minor children, Josue Enriquez, and Jose Enriquez.

Plaintiffs file the instant action against the following Defendants: Chad F. Wolf, Acting Secretary of the Department of Homeland Security ("DHS"); Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); William P. Barr, Attorney General ("AG"); and Donald J. Trump, President of the United States.

## I.  INTRODUCTION

1.  Plaintiff's wife and his minor children fled their home country of Honduras and attempted to enter the United States to seek asylum, but were denied entry and forced to remain in Mexico while their immigration proceedings go forward due to the MPP program that the Trump administration has put in place.

2.  The MPP program seeks to prevent those individuals from Central American countries, such as Honduras, from entering the United States. Under the

program, border agents do not allow individuals from those countries to enter; instead, forcing them to remain in dangerous border cities in Northern Mexico and requiring them to report to the port of entry whenever they have a court hearing.

3.   The MPP program violates decades of U.S. immigration law and policy and systemically denies aliens from Central American countries an opportunity to enter, be free from harm and persecution, and seek asylum in the United States.

4.   For aliens such as Plaintiff's wife and children, they have essentially been condemned to living conditions that are dangerous and that threaten their very lives daily. For this reason, Plaintiff requests that this Court enjoin the MPP program's applicability to them and allow Plaintiff's family to be reunited with him in Texas.

## II.  JURISDICTION AND VENUE

5.   This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 2201-2202 and 28 U.S.C. § 1331.

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are officers of the United States and Plaintiff resides in this district.

## III.  PARTIES

7.   Plaintiff, Wilmer Ramiro Enriquez Turcios, is a resident of Houston, Texas. He brings this suit individually and on behalf of his spouse and two children, who

are currently in Mexico.

8.  Plaintiff, Elba Guerrero Alvarado, fled Honduras and currently is being forced to reside in Mexico due to the MPP program.

9.  Plaintiff, Josue Enriquez, fled Honduras and currently is being forced to reside in Mexico due to the MPP program.

10. Plaintiff, Jose Enriquez, fled Honduras and currently is being forced to reside in Mexico due to the MPP program.

11. Defendant, Chad F. Wolf, is the Acting Secretary of the DHS. He is sued in his official capacity.

12. Defendant, Mark A. Morgan, is the Acting Commissioner of the CBP who is responsible for the initial processing of aliens at the border. He is sued in his official capacity.

13. Defendant, William P. Barr, is the AG of the United States. He shares the responsibility of implementing asylum laws in the United States. He is sued in his official capacity.

14. Defendant, Donald J. Trump, is the President of the United States. He is responsible for all the DHS's policies. He is sued in his official capacity.

## IV. BACKGROUND

15. The President, Donald J. Trump, has consistently shown dislike and hostility towards people of color coming from the Central American countries to apply

4

for asylum.

16. The President has repeatedly stated that he wants to physically harm individuals from Central American countries. He has even suggested electrifying the border wall, fortifying it with an alligator moat, installing spikes on the top to pierce human flesh, and having soldiers shoot migrants attempting to cross the border.[1]

17. While he was campaigning to become the President, Trump repeatedly made racist statements that Mexicans were "rapists," "animals,"[2] brought drugs and crime to the United States, and that people coming from South and Latin American countries were "not the right people."[3]

18. While in office, Trump has continued his racist rhetoric, remarking that he wants people from countries like Norway and not individuals from "shithole" countries like El Salvador.[4]

19. In addition to his racist remarks, the President believes that asylum seekers are attempting to exploit loopholes in the U.S. immigration system, arguing that

---

[1] Michael D. Shear & Julie Hirschfeld Davis, *Shoot Migrants' Legs, Build Alligator Moat: Behind Trump's Ideas for Border*, N.Y. TIMES (Oct. 2, 2019), www.nytimes.com/2019/10/01/us/politics/trump-border-wars.html.

[2] Time Staff, *Here's Donald Trump's Presidential Announcement Speech*, TIME (June 16, 2015), time.com/3923128/donald-trump-announcement-speech.

[3] Gregory Korte & Alan Gomez, *Trump Ramps Up Rhetoric on Undocumented Immigrants: 'These Aren't People. These Are Animals.'*, USA TODAY (May 17, 2018), www.usatoday.com/story/news/politics/2018/05/16/trump-immigrants-animals-mexico-democrats-sanctuary-cities/617252002/.

[4] Ryan T. Beckwith, *President Trump Called El Salvador, Haiti 'Shithole Countries': Report*, TIME (Jan. 11, 2018), time.com/5100058/donald-trump-shithole-countries/.

most noncitizens made up fraudulent claims in order to enter the country illegally.[5] He has even suggested that those who enter the country illegally and attempt to apply for asylum be given no due process whatsoever and be sent back to where they came from immediately.[6]

20. Due to Trump's dislike for immigrants from Mexico and Central American countries, his administration has consistently done everything that it can to destroy the asylum laws of the United States. For example, AG opinions have attempted to cut off and make it extremely more difficult to get asylum protection. *See*, *e.g.*, *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) (restricting protections for individuals seeking asylum based on suffering past domestic abuse); *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019) (restricting protections for individuals seeking asylum based on family membership). The DHS has also attempted to ban asylum for people who illegally crossed the border into the United States. *See East Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d

---

[5] *See*, *e.g.*, *Rep. Tim Ryan calls Trump's history visit to the DMZ an 'appeasement tour'*, FOX NEWS (June 30, 2019), www.foxnews.com/transcript/rep-tim-ryan-calls-trumps-historic-visit-to-the-dmz-an-appeasement-tour; The White House, *President Donald J. Trump Is Working to Stop the Abuse of Our Asylum System and Address the Root Causes of the Border Crises* (Apr. 29, 2019), www.whitehouse.gov/briefings-statements/president-donald-j-trump-working-stop-abuse-asylum-system-address-root-causes-border-crisis/; *Trump Says Some Asylum Seekers Are Gang Members*, CBS NEWS (Apr. 5, 2019), www.cbsnews.com/news/trump-says-some-asylum-seekers-are-gang-members-border-calexico-2019-04-05-today/.

[6] Donald J. Trump (@realDonaldTrump), Twitter (June 24, 2018, 11:02 AM), twitter.com/realDonaldTrump/status/1010900865602019329; *see also* Donald J. Trump (@realDonaldTrump), Twitter (June 21, 2018, 8:12 AM), twitter.com/realDonaldTrump/status/1009770941604298753/.

838 (N.D. Cal. 2018). And finally, the DHS has banned asylum for those individuals at the southern border who have not applied for and been denied asylum in a country that they transitioned through. *See* Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33, 829 (Jul. 16, 2019); *see also* 8 C.F.R. § 208.13(c)(4).

21. The MPP program is the latest effort by the current administration to deny individuals from the Central American countries from entering the United States and remain here safely while their asylum case proceeds in the immigration court system.

22. Implemented in December of 2018, the MPP program states that individuals "arriving in or entering the United States from Mexico—illegally or without proper documentation—may be returned to Mexico for the duration of their immigration proceedings."[7]

23. Under the MPP, the United States would initially detain asylum seekers at the border, process them, schedule their removal hearings, send them back to Mexico, and require them to come back to the port of entry to attend their court hearings.

24. There are no regulations governing the operation of the MPP program; rather,

---

[7] *See* DHS, Secretary Kirstjen M. Nielsen Announces Historic Action to Confront Illegal Immigration: Announces Migrant Protection Protocols (Dec. 20, 2018), www.dhs.gov/ news/2018/12/20/secretary-nielsen-announces-historic-action-confront-illegal-immigration.

it has been created through press releases and memorandums.

25. Worse still, the MPP program deviates from the credible fear interview process, which requires officers to ask individuals who cross the border whether they have a fear of return, by providing asylum interviews at the border to only those individuals who affirmatively express a fear of returning.[8]

26. The DHS implements the MPP program and expels asylum seekers to Mexico even though they know that there is a high likelihood that they will be persecuted or tortured while they stay there.

27. The goal of the MPP program is simple: bar entry of Central Americans into the United States and confine them to camps to reduce the number of people who want to seek asylum and protection in the United States.

28. The MPP program is clearly contrary to the immigration laws of the United States that protect individuals who are fleeing persecution by offering them the opportunity to seek asylum while remining in the country, in front of an immigration judge.

## V.  FACTS

29. Plaintiff Elba fled Honduras with Plaintiffs Josue and Jose on October 4, 2019

---

[8] DHS, *Assessment of the Migrant Protection Protocols (MPP), Appendix A: Additional Analysis of MPP Fear-Assessment Protocol* (Oct. 28, 2019), www.dhs.gov/sites/default/files/publications/assessment_of_the_migrant_protection_protocols_mpp.pdf.

and arrived in the United States on November 2, 2019.

30. Elba and her children fled Honduras because they suffered persecution on account of Elba's political opinions. *See* Exhibit 1—Sworn Declaration of Elba Guerrero Alvarado.

31. While in Honduras, Elba worked for an environmental group known as "La Mesa Nacional." *Id*. This group worked to protest industry and government projects since 2010. *Id*.

32. Elba became the President of the local chapter of her group in 2018. *Id*. It was at this time she and her family were harassed, threatened with death, and physically harmed. *Id*. On one occasion, Jose was kidnapped by military officials and held in an abandoned house. *Id*. These officials tied Jose up and even burned him. *Id*. When Elba was led to his location, she was detained as well. *Id*. They tied her up, put a gun in her mouth, and beat her over the head to the point where she lost consciousness. *Id*. Thankfully, Elba and her son were let go and they were able to flee to the United States. *Id*.

33. Elba's husband, Plaintiff Wilmer, fled Honduras on September 1, 2019. *Id*. He fled Honduras because he was afraid that the same people who harmed Elba will harm or kill him. He applied for asylum, but unlike Elba, he was not subject to the MPP and was allowed to enter the United States. *Id*. Wilmer has not seen Elba, Josue, or Jose since he left Honduras. *Id*.

34. Elba, Josue, and Jose were apprehended by CBP officials, served with notices to appear and a notice that they were being processed under the MPP. They were then sent back to Matamoros, Mexico and were told that they could not return until their next court hearing. *Id.*

35. Prior to being sent to Mexico, Elba pleaded with immigration officials to allow her to remain in the United States. *Id*. She told them that she was terrified of going to Matamoros because of the high levels of crime there. *Id*. Immigration officials, however, ignored Elba's concerns and told her that she had to go there until her court date. *Id*.

36. Elba and her children have never been to Matamoros, Mexico prior to being processed under the MPP.

37. Matamoros is part of the Mexican state of Tamaulipas, for which a Level 4 travel warning has been issued[9] by the U.S. Department of State ("DOS").[10]

38. Per the State Departments own warnings, Tamaulipas has criminal groups, such as the Gulf Cartel and the Zetas, who are heavily armed and who patrol large areas of the state, often acting illegally without any repercussions from law

---

[9]https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/mexico-travel-advisory.html

[10] The Level 4 designation has been given to countries such as Syria and Afghanistan. https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/syria-travel-advisory.html; https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/afghanistan-advisory.html

enforcement. The criminal activity in question includes gun battles, murder, armed robbery, carjacking, kidnapping, forced disappearances, extortion, and sexual assault.[11]

39. Additionally, U.S. government employees have been instructed that they can only travel to Tamaulipas if they travel in the limited areas between the U.S. consulates and ports of entry. They are forbidden from using freeways to travel between cities in the state.[12]

40. Given that the DOS has issued the aforementioned warnings, the DHS should be aware of the conditions in Matamoros. Yet, it continues to expel asylum seekers, like Elba and her children, there.

41. While Elba and her children been in Matamoros, they have experienced deplorable living conditions. *Id*. Currently, they live in a shelter which houses approximately 150 adults and children. *Id*. There is one community restroom that is small and is used by both men and women and so, there is no privacy whatsoever even when showering. *Id*. The beds in the shelter are extremely close together and there is no chance to practice social distancing, a practice that is crucial given the current coronavirus ("COVID-19") pandemic. *Id*. There

---

[11] OSAC, *Mexico 2019 Crime and Safety Report: Matamoros* (Apr. 2, 2019), https://www.osac.gov/Content/Report/03b73ba8-0cd3-4772-bc97-15f4aebfc985
[12] Department of State, *Mexico Travel Advisory* (Dec. 17, 2019), travel.state.gov/content/travel/en/traveladvisories/traveladvisories/mexico-travel-advisory.html.

are also no tests available for anyone at the shelter, and Elba and her children have not been provided with masks or gloves to protect themselves. *Id*. They believe that they could easily become infected with COVID-19 if someone at their shelter gets the virus, if that has not happened already. *Id*.

42. Another serious problem with the facility where Elba and her children are forced to live in is that it is infested with rats. *Id*. The rats have bitten numerous individuals at the shelter, which means that the shelter is a breeding ground for the spread of infectious diseases. *Id*. Elba and her children are therefore at constant risk of becoming seriously ill. *Id*.

43. Moreover, Elba and her children live in constant fear for their lives and safety because of the dangerous conditions in Matamoros. *Id*. As Elba notes, she has met people while in the shelter who have been kidnapped by Cartel members and never been seen again. *Id*. She is afraid to go out at night and only leaves her shelter once a day to get food at the market around noon because she believes that she is an easy target for extortion or trafficking. *Id*.

44. According to Elba, there was even an incident one night near the shelter where armed Cartel members arrived and began firing their weapons. *Id*. The Mexican government was called in and they engaged in shootout with the Cartel members. *Id*. Thankfully, Elba and her children were not physically harmed, but it is clear that their lives are in danger every single day that they remain in

Matamoros. *Id*.

## VI. CLAIMS FOR RELIEF

### Count 1 – Violation of the INA and APA (Contiguous Territory Return Provision)

45. Plaintiffs incorporate by reference the allegations in paragraphs 1-44.

46. Under 8 U.S.C. § 1225(b)(2)(C), the DHS is authorized to return individuals to a contiguous territory during their immigration proceedings if they are an applicant for admission. That statute, however, does not apply to Elba and her children for two reasons.

47. First, § 1225(b)(2)(C) does not apply to individuals who entered the United States without inspection. It only applies to those who are "arriving"— individuals who present themselves at a port of entry. *See* 8 C.F.R. §§ 1.2, 1001.1(q); *see also* 8 C.F.R. § 235.3(b) (interpreting § 1225(b)(2)(C) to permit the DHS to force an individual who arrives at a land border port-of-entry from Canada or Mexico to remain in their country while awaiting their hearings).

48. Second, § 1225(b)(2)(C) applies only to individuals to whom § 1225(b)(2) applies. It does not apply to those individuals to whom § 1225(b)(1) applies.

49. Section 1225(b)(1) applies only to those aliens who enter the United States without being inspected and admitted and express a fear of persecution in their country, while § 1225(b)(2) applies to those aliens who "arrive" in the United States as applicants for admission.

13

50. In this case, Elba and her children fall under § 1225(b)(1) because they entered without inspection, were apprehended, and expressed a fear of return to their country of origin. Accordingly, § 1225(b)(2)(C) does not apply to them.

51. In sum, applying MPP to Elba and her children's cases is contrary to the Immigration and Nationality Act ("INA") and its regulations. Thus, it is being implemented in violation of the APA. *See* 5 U.S.C. § 706(2).

## Count 2 – Violation of the INA and APA (Asylum Law)

52. Plaintiffs incorporate by reference the allegations in paragraphs 1-51.

53. 8 U.S.C. § 1158 provides that an alien may apply for asylum in the United States, regardless of their manner of entry.

54. The MPP blatantly contradicts the plain language of the statute, and thus, it is a violation of Congress's intent when it promulgated laws relating to asylum seekers.

55. In this case, Elba and her children entered the United States without being inspected, i.e., they were not "arriving" at a port-of-entry. Therefore, applying MPP to Elba and her children contravenes the INA and its regulations. Accordingly, it is a violation of the APA. *See* 5 U.S.C. § 706(2).

## Count 3 – Violation of Defendants' Non-Refoulment Duties

56. Plaintiffs incorporate by reference the allegations in paragraphs 1-55.

57. Article 33 of the United Nations Convention Relating to the Status of Refugees

14

states: "[n]o Contracting State shall expel or return ('*refouler* ') a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion." This is known as non-refoulement.

58. Similarly, under the INA, an individual cannot be removed to a country where it is more likely than not that the individual will face persecution or torture. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16.

59. The principle of non-refoulement is a universal principle and an obligatory norm of customary international law, which the United States cannot abrogate, and U.S. courts are bound by it. *See INS v. Doherty*, 502 U.S. 314, 331 (1992).

60. The government recognizes their duty of non-refoulement because they have released regulations that ensure an alien has an opportunity to see an immigration judge before being sent to a country where they fear persecution or torture. *See* 8 C.F.R. §§ 208.16(b)(2), (c)(2).

61. In this case, Elba and her children did not receive non-refoulement procedures that were consistent with U.S. and international laws because they were forced to go to Mexico unlawfully, even though there is a high chance of them being persecuted or tortured there.

62. In sum, the DHS has entirely failed to comply with the non-refoulement

procedures and Elba's and her children's rights to not be removed to a country where they fear persecution or torture. Therefore, the DHS has violated its obligations under international law, the INA, its own regulations, and the APA. *See* 5 U.S.C. § 706.

### Count 4 – Violation of the APA's Notice and Comment Provisions

63. Plaintiffs incorporate by reference the allegations in paragraphs 1-62.

64. Under 5 U.S.C. § 553, legislative rules cannot be adopted without notice and an opportunity to comment for a 30-day period.

65. Neither the DHS, nor its sub-agencies, put out regulations or provided any opportunity for public comment with respect to MPP. Rather, the DHS has only issued press releases and unclear guidance on how MPP is to operate.[13]

66. In sum, the MPP is a legislative rule that was not presented to the public for comment and violates the notice and comment requirements of the APA.

### Count 5 – Enactment of the MPP is an Arbitrary, Capricious, and Unlawful Agency Action

67. Plaintiffs incorporate by reference the allegations in paragraphs 1-66.

68. Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706(2).

---

[13] DHS Press Release, Migrant Protection Protocols. https://www.dhs.gov/news/2019/01/24/migrant-protection-protocols

69. According to the U.S. Supreme Court, "[t]hough an agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy could constitute action that must be overturned as arbitrary, capricious [or] an abuse of discretion." *See INS v. Yang*, 519 U.S. 26, 32 (1996).

70. Prior to MPP, migrants who entered the United States without inspection were allowed to remain in the country while their asylum case proceeded in the immigration court.

71. MPP's new non-refoulement procedures are a drastic departure from prior general policy and such a departure is entirely irrational because the CBP is now sending asylum seekers to a country where there is a high likelihood that they will be persecuted and/or tortured, a fact that, as noted above, the DHS is clearly aware of, given the DOS's guidance.[14]

72. MPP is also an unexplained departure from the DHS's prior interpretation of 8 U.S.C. § 1225(b)(2)(C). As previously noted, § 1225(b)(2)(C) applies only to those aliens who are "arriving." It does not apply to aliens, like Elba and her children, who have entered the United States without inspection and were apprehended. Previously, the DHS interpreted § 1225(b)(2)(C) in accordance

---

[14] *See* Footnote 9 and 12, *supra*.

with the plain statutory text. Now, however, for an unknown reason, the DHS has irrationally departed from that interpretation and has determined that all aliens, regardless of their manner of entry, are subject to the MPP. Accordingly, the enactment of the MPP is arbitrary, capricious, and an abuse of discretion.

73. In addition, the MPP is contrary to law. As noted above, asylum law mandates that any individual who enters illegally into the United States is eligible to remain in the country until their asylum proceedings have concluded. *See* 8 U.S.C. § 1158. MPP has changed that by allowing only those who are "arriving" to remain in the country. Therefore, the MPP is in violation of the law and its enactment and procedures are a violation of the APA.

### Count 6 – Due Process Violation

74. Plaintiffs incorporate by reference the allegations in paragraphs 1-73.

75. The Due Process Clause of the Fifth Amendment states that "no person shall…be deprived of life, liberty, or property, without due process of law." *See* U.S. Const. Amend. V.

76. The U.S. Supreme Court has held that aliens who are in removal or deportation proceedings are entitled to due process under the Fifth Amendment of the U.S. Constitution. *See Reno v. Flores*, 507 U.S. 292, 306 (1993).

77. In this case, the DHS, through the MPP, has sent Elba and her children to Mexico, a place where they face threats to their life and liberty. As such, the

DHS has violated Elba and her children's Fifth Amendment due process rights.

78. Additionally, due process protects aliens from government conduct that "shocks the conscience" or actions that place an individual in substantial risk of harm. *See Irish v. Maine*, 849 F.3d 521, 526 (1st Cir. 2017); *Currier v. Doran*, 242 F.3d 905, 918 (10th Cir. 2001).

79. Once again, the DHS has sent Elba and her children to Matamoros, Mexico, a place where, as noted above, their lives are at substantial risk of harm or death. Certainly, this behavior "shocks the conscience" because no rational individual in our society would subject another person to such cruel conditions. As such, the DHS has violated Elba and her sons' Fifth Amendment due process rights.

## Count 7 – Equal Protection Violation

80. Plaintiffs incorporate by reference the allegations in paragraphs 1-79.

81. Plaintiffs have a right to equal protection of the laws pursuant to the Fifth Amendment of the Constitution. *See* U.S. Const. Amend. V.

82. MPP, and its non-refoulement procedures, are solely motivated by racial bias and animus towards people of color from Central America. Therefore, it is entirely unlawful and unconstitutional. *See Village of Arlington Heights v. Metropolitan Houston Development Corp.*, 429 U.S. 252, 265-66 (1977).

## VII.   CONCLUSION

83. For the aforementioned reasons, the application of the MPP to Elba and her
children is arbitrary, capricious, an abuse of discretion, and not in accordance
with the law. Judicial review through this Court is therefore warranted under
the provisions of the APA.

## VIII.  PRAYER FOR RELIEF

84. Wherefore, Plaintiffs respectfully request that this Court:

   a. Find that the MPP and its non-refoulment procedures are unlawful and that
   Elba and her children's inclusion in MPP was unlawful;

   b. Enjoin the Defendants from applying MPP to Elba and her children;

   c. Order that Elba and her children be allowed to enter the United States and
   remain here until their removal proceedings have concluded;

   d. Award attorney's fees under the Equal Access to Justice Act, 28 U.S.C. §
   2412(d) and 5 U.S.C. § 504;

   e. Order any further relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Raed Gonzalez*

_____

Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
2200 Southwest Freeway, Suite 550
Houston, Texas 77098
Phone: (713) 481-3040,
Fax: (713)588-8683
rgonzalez@gonzalezolivierillc.com
*Counsel of Record for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Wilmer Ramiro Enriquez Turcios, individually, and on behalf of Elba Guerrero Alvarado, Josue Enriquez, and Jose Enriquez | |
| *Plaintiff*, | Case No. 4:20-cv-1982 |
| v. | |
| Chad F. Wolf, Acting Secretary of the Department of Homeland Security; Mark A. Morgan, Acting Commissioner of U.S. Customs and Border Protection; William P. Barr, Attorney General; Donald J. Trump, President of the U.S. | Date: June 4, 2020 |
| *Defendants*. | |

---

## INDEX OF EXHIBITS

---

Exhibit 1—Sworn Declaration of Elba Guerrero Alvarado